Kasey C. Nye
SB #020610
knye@waterfallattorneys.com

Waterfall Economidis Caldwell
  Hanshaw & Villamana, P.C.
5210 E. Williams Circle, Suite 800
Tucson, AZ 85711
Telephone (520) 790-5828
Facsimile (520) 745-1279

Counsel for Debtor

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| GOLD STAR CAPITAL L.L.C., an Arizona Limited Liability Company, | Case No. 4:18-BK-06129-BMW |
| Debtor. | **PLAN OF REORGANIZATION DATED SEPTEMBER 6, 2018** |

**Article I.     SUMMARY OF PLAN**

This Plan of Reorganization (the "**Plan**") under chapter 11 of the Bankruptcy Code (the "**Code**") proposes to pay creditors of GOLD STAR CAPITAL L.L.C, an Arizona Limited Liability Company,, LLC, the debtor and debtor in possession ("**Debtor**") from an infusion of capital, cash flow from renting properties, sale of assets, or other sources of future income**.**

This Plan provides for 14 classes of secured claims, and 1 class of unsecured claims. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 25 cents on the dollar. This Plan also provides for the payment of administrative and priority claims in full in accordance with the Bankruptcy Code.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**Article II.     CLASSIFICATION OF CLAIMS AND INTERESTS**

| Class | Description of Class | Impaired (Y/N) | Entitled to Vote (Y/N) |
|---|---|---|---|
| 1 | All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)). | N | N |
| 2 | The claims secured by a deed of trust encumbering 10113 N AVRA VISTA DR, MARANA, AZ 85653, to the extent allowed as a secured claim under § 506 of the Code. | Y | Y |
| 3 | The claims secured by a Homeowner's Association Lien encumbering 10113 N AVRA VISTA DR, MARANA, AZ 85653, to the extent allowed as a secured claim under § 506 of the Code. | Y | Y |
| 4 | The claims secured by a deed of trust encumbering 3101 W AVENIDA ISABEL, TUCSON AZ 85746, to the extent allowed as a secured claim under § 506 of the Code. | Y | Y |
| 5 | The claims secured by a deed of trust encumbering 4526 EAST 16TH STREET, TUCSON, AZ 85711, to the extent allowed as a secured claim under § 506 of the Code. | Y | Y |
| 6 | The claims secured by a deed of trust encumbering 5621 E ALTA VISTA ST., TUCSON, AZ 85712, to the extent allowed as a secured claim under § 506 of the Code. | Y | Y |
| 7 | The claims secured by a deed of trust encumbering 5757 S MORRIS BLVD, TUCSON, AZ 85706 to the extent allowed as a secured claim under § 506 of the Code. | Y | Y |

| Class | Description of Class | Impaired (Y/N) | Entitled to Vote (Y/N) |
|---|---|---|---|
| 8 | The claims secured by a deed of trust encumbering 6026 E 33RD St, TUCSON AZ 85711, to the extent allowed as a secured claim under § 506 of the Code. | Y | Y |
| 9 | The claims secured by a deed of trust encumbering 7575 NORTH NORTH AIRE AVENUE, TUCSON, AZ 85741, to the extent allowed as a secured claim under § 506 of the Code. | Y | Y |
| 10 | The claims secured by a deed of trust encumbering 9499 EAST MYRA DRIVE, TUCSON, AZ 85730, to the extent allowed as a secured claim under § 506 of the Code. | Y | Y |
| 11 | The claims secured by a deed of trust encumbering 9685 N LINDA VISTA PLACE, TUCSON, AZ 85742, to the extent allowed as a secured claim under § 506 of the Code. | Y | Y |
| 12 | The claims secured by a purchase money lien on that certain 2011 Zone Spark VIN ending 0021, to the extent allowed as a secured claim under § 506 of the Code. | Y | Y |
| 13 | The allowed claims of the Pima County Treasurer Secured Property Tax Claim held by the Pima County Treasurer to the extent allowed as a secured claim under § 506 of the Code. | N | N |
| 14 | General Unsecured Claims all unsecured claims allowed under § 502 of the Code. | Y | Y |
| 15 | Equity Membership Interests | Y | Y |

**Article III. TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEE'S FEES, AND PRIORITY TAX CLAIMS**

Section 3.01  Unclassified Claims. Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

Section 3.02  Administrative Expense Claims. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

Section 3.03  Priority Tax Claims. Each holder of a priority tax claim will be paid in equal monthly installments so that they are paid in full within plus statutory interest within 60 months of the Petition Date.

Section 3.04  United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) ("**U.S. Trustee Fees**") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

**Article IV. TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

Section 4.01  Class 1- Priority Claims.

(a)  Description. Class 1 consists of all allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

(b)  Treatment**.** Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed by a final non-appealable order.

Section 4.02  Class 2.        Claims Secured by Deed(s) of Trust on 10113 N Avra Vista Dr, Marana, AZ 85653.

(a)  Description**.** Class 2 consists of the claims to the extent allowed under Code § 506 arising from that certain loan from May 10, 2017 and secured by that certain Deed of Trust recorded May 22, 2017 at SEQUENCE 20171420117 in the records of Pima County Arizona encumbering the real property and improvements located at 10113 N Avra Vista Dr, Marana, AZ 85653, Tax parcel ID # 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, and legally described:

THE FOLLOWING REAL PROPERTY SITUATED IN PIMA COUNTY, ARIZONA:

LOT 7, OF AVRA VISTA, A SUBDIVISION, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN THE OFFICE OF THE

COUNTY RECORDER OF PIMA COUNTY, ARIZONA, RECORDED IN BOOK 59 OF MAPS AND PLATS, PAGE 51 THEREOF AND DECLARATION OF SCRIVENER'S REPORT RECORDED IN DOCKET 12771, PAGE 2332. EXCEPT ALL COAL AND OTHER MINERALS AS RESERVED IN THE PATENT FROM THE UNITED STATES OF AMERICA, RECORDED IN BOOK 251, PAGE 174.

(b) <u>Allowance</u>. Unless the holder of the Class 2 claim elects to be treated as fully secured under Code § 1111(b), the Class 2 claim will be allowed in the amount of $165,000 or such other amount as the court determines under Code § 506. Any other amounts owed under the May 2017 loan will be classified as a general unsecured claim.

(c) <u>Treatment</u>. Class 2 is impaired by this Plan.

(i) <u>Standard Treatment</u>. Unless the holder of the Class 2 claim elects to be treated as fully secured under Code §1111(b), the holder of the allowed Class 2 Claim will be paid in full plus interest at 4.125% per annum (or such other rate as the Court determines appropriate under Code § 1129(b)(2)(A)) on the following schedule: Beginning the first-day of the first calendar month occurring more than 30 days after the Effective Date, the Debtor will make monthly payments of principal and interest, based on a 40-year amortization schedule. In addition to monthly principal and interest payments, the Debtor will pay property tax and insurance escrow deposits to the holder of the allowed Class 2 Claim. The holder of the allowed Class 2 Claim must use all such escrow deposits to pay the property taxes and insurance on the Class 2 property as had been done on the original loan. The holder of the allowed Class 2 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

(ii) <u>1111(b) Treatment</u>. If, and only if, the holder of the allowed Class 2 Claim elects to be treated as fully secured under § 1111(b), then the allowed Class 2 claim will be paid in 468 equal monthly payments, or such monthly payment amount as will ensure a present value equal to the present value of its collateral. Notwithstanding any provision to the contrary in the Deed of Trust securing the Class 2 Claim, any time between 60 and 180 months after the Effective Date, the Reorganized Debtor may transfer the Class 2 Property subject to the Liens, but only if (a) the Reorganized Debtor is not in default under the repayment terms of this Plan, (b) the Reorganized Debtor or the transferee pays the holder of the Class 2 Claim a transfer fee equal to 1% of the then outstanding principal balance of the Class 2

Claim at closing of the transfer, and (c) the holder of the Class 2 approves that transferee, which approval may only be reasonably withheld based upon the financial qualifications of the transferee. The holder of the allowed Class 2 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

Section 4.03  Class 3- Claims Secured by Homeowner's Association Lien encumbering 10113 N Avra Vista Dr, Marana, AZ 85653.

(a) Description. Class 3 consists of the claims to the extent allowed under Code § 506 arising from that certain Homeowners Association Lien Recorded December 1, 2017 SEQUENCE 20173350605 in the records of Pima County Arizona encumbering the real property and improvements located at 10113 N Avra Vista Dr, Marana, AZ 85653, Tax parcel ID # 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, and legally described:

THE FOLLOWING REAL PROPERTY SITUATED IN PIMA COUNTY, ARIZONA:

LOT 7, OF AVRA VISTA, A SUBDIVISION, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF PIMA COUNTY, ARIZONA, RECORDED IN BOOK 59 OF MAPS AND PLATS, PAGE 51 THEREOF AND DECLARATION OF SCRIVENER'S REPORT RECORDED IN DOCKET 12771, PAGE 2332. EXCEPT ALL COAL AND OTHER MINERALS AS RESERVED IN THE PATENT FROM THE UNITED STATES OF AMERICA, RECORDED IN BOOK 251, PAGE 174.

(b) Allowance.  The Class 3 claim will be allowed in the amount of $516.00 or such other amount as the court determines under Code § 506.

(c) Treatment. Class 3 is impaired by this Plan.

(i) After the Class 2 claim is paid in full, the Class 3 claim will be paid cash equal to the amount of its claim plus interest at the federal judgment rate as of the Effective Date of the Plan. If the Reorganized Debtor determines interest of the estate to prepay the Class 3 claim, the Reorganized Debtor may do so.

Section 4.04  Class 4- Claims Secured by Deed(s) of Trust on 3101 W Avenida Isabel, Tucson AZ 85746.

(a) Description. Class 4 consists of the claims to the extent allowed under Code § 506 arising from that certain loan dated October 31, 2016 and secured by that certain

Deed of Trust Recorded November 1, 2016 at SEQUENCE 20163060071 in the records of Pima County Arizona encumbering the real property and improvements located at 3101 W Avenida Isabel, Tucson AZ 85746, Tax parcel ID 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, and legally described:

> LOT 30 OF MISSION RIDGE, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF PIMA COUNTY, ARIZONA, RECORDED IN BOOK 33 OF MAPS AND PLATS, PAGE 19. EXCEPT ALL COAL, OIL AND OTHER MINERALS AS RESERVED IN THE PATENT FROM THE UNITED STATES OF AMERICA.

(b) <u>Allowance</u>. Unless the holder of the Class 4 claim elects to be treated as fully secured under Code § 1111(b), the Class 4 claim will be allowed in the amount of $70,973 or such other amount as the court determines under Code § 506. Any other amounts owed under the October 2016 loan will be classified as a general unsecured claim.

(c) <u>Treatment</u>. Class 4 is impaired by this Plan.

  (i) <u>Standard</u>. The holder of the allowed Class 4 Claim will be paid in full plus interest at 4.125% per annum (or such other rate as the Court determines appropriate under Code § 1129(b)(2)(A)) on the following schedule: Beginning the first-day of the first calendar month occurring more than 30 days after the Effective Date, the Debtor will make monthly payments of principal and interest, based on a 40-year amortization schedule. In addition to monthly principal and interest payments, the Debtor will pay property tax and insurance escrow deposits to the holder of the allowed Class 4 Claim. The holder of the allowed Class 4 Claim must use all such escrow deposits to pay the property taxes and insurance on the Class 4 property as had been done under the original loan. The holder of the allowed Class 4 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

  (ii) <u>1111(b) Treatment</u>. If, and only if, the holder of the allowed Class 4 Claim elects to be treated as fully secured under § 1111(b), then the allowed Class 4 claim will be paid in 468 equal monthly payments, or such monthly payment amount as will ensure a present value equal to the present value of its collateral. Notwithstanding any provision to the contrary in the Deed of Trust securing the Class 4 Claim, any time between 60 and 180 months after the Effective Date, the Reorganized Debtor may transfer the Class 4 Property subject to the Liens, but only if (a) the

Reorganized Debtor is not in default under the repayment terms of this Plan, (b) the Reorganized Debtor or the transferee pays the holder of the Class 4 Claim a transfer fee equal to 1% of the then outstanding principal balance of the Class 4 Claim at closing of the transfer, and (c) the holder of the Class 4 approves that transferee, which approval may only be reasonably withheld based upon the financial qualifications of the transferee.

Section 4.05  Class 5- Claims Secured by Deed(s) of Trust on 4526 East 16th Street, Tucson, AZ 85711.

(a) Description. Class 5 consists of the claims to the extent allowed under Code § 506 arising from that certain loan dated March 26, 2009 and secured by that certain Deed of Trust Recorded April 3, 2009 at DOCKET 13529 PAGE 2325, SEQUENCE 20090640527 in the records of Pima County Arizona encumbering the real property and improvements located at 4526 East 16th Street, Tucson, AZ 85711, Tax parcel ID # 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, and legally described:

LOT 5, EXCEPT THE WEST 15 FEET THEREOF, IN BLOCK 35 OF LINDEN PARK ADDITION, A SUBDIVISION OF PIMA COUNTY, ARIZONA, ACCORDING TO THE MAP OR PLAT THEREOF OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF PIMA COUNTY, ARIZONA, IN BOOK 9 OF MAPS AND PLATS AT PAGE 67 THEREOF,

(b) Allowance.  Unless the holder of the Class 5 claim elects to be treated as fully secured under Code § 1111(b), the Class 5 claim will be allowed in the amount of $72,000 or such other amount as the court determines under Code § 506. Any other amounts owed under the March 2009 loan will be classified as a general unsecured claim.

(c) Treatment. Class 5 is impaired by this Plan.

(i) Standard Treatment.  The holder of the allowed Class 5 Claim will be paid in full plus interest at 4.125% per annum (or such other rate as the Court determines appropriate under Code § 1129(b)(2)(A)) on the following schedule: Beginning the first-day of the first calendar month occurring more than 30 days after the Effective Date, the Debtor will make monthly payments of principal and interest, based on a 40-year amortization schedule. In addition to monthly principal and interest payments, the Debtor will pay property tax and insurance escrow deposits to the holder of the allowed Class 5 Claim. The holder of the allowed Class 5 Claim must use all such escrow deposits to pay the property taxes and insurance on the Class 5 property as had been done on the original loan.   The holder of the allowed Class 5 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower,

maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

(ii) <u>1111(b) Treatment</u>. If, and only if, the holder of the allowed Class 5 Claim elects to be treated as fully secured under § 1111(b), then the allowed Class 5 claim will be paid in 468 equal monthly payments, or such monthly payment amount as will ensure a present value equal to the present value of its collateral. Notwithstanding any provision to the contrary in the Deed of Trust securing the Class 5 Claim, any time between 60 and 180 months after the Effective Date, the Reorganized Debtor may transfer the Class 5 Property subject to the Liens, but only if (a) the Reorganized Debtor is not in default under the repayment terms of this Plan, (b) the Reorganized Debtor or the transferee pays the holder of the Class 5 Claim a transfer fee equal to 1% of the then outstanding principal balance of the Class 5 Claim at closing of the transfer, and (c) the holder of the Class 5 approves that transferee, which approval may only be reasonably withheld based upon the financial qualifications of the transferee. The holder of the allowed Class 5 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

Section 4.06  <u>Class 6- Claims Secured by Deed(s) of Trust on 5621 E Alta Vista St., Tucson, AZ 85712.</u>

(a) <u>Description</u>. Class 6 consists of the claims to the extent allowed under Code § 506 arising from that certain loan dated July 16, 2016 and secured by that certain Deed of Trust and Assignment of Rents Recorded: July 21, 2016 at SEQUENCE 20152020134 in the records of Pima County Arizona encumbering the real property and improvements located at 5621 E Alta Vista St., Tucson, AZ 85712, Tax parcel ID # 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, and legally described:

LOT 40 OF CARLOS TERRACE, PIMA COUNTY, .ARIZONA ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE PIMA COUNTY RECORDER IN BOOK 12 OF MAPS AND PLATS, PAGE 12.

(b) <u>Allowance</u>.  Unless the holder of the Class 6 claim elects to be treated as fully secured under Code § 1111(b), the Class 6 claim will be allowed in the amount of $155,000 or such other amount as the court determines under Code § 506. Any other amounts owed under the July 2016 loan will be classified as a general unsecured claim.

(c) <u>Treatment</u>. Class 6 is impaired by this Plan.

  (i) The holder of the allowed Class 6 Claim will be paid in full plus interest at 4.125% per annum (or such other rate as the Court determines appropriate under Code § 1129(b)(2)(A)) on the following schedule: Beginning the first-day of the first calendar month occurring more than 30 days after the Effective Date, the Debtor will make monthly payments of principal and interest, based on a 40-year amortization schedule. In addition to monthly principal and interest payments, the Debtor will pay property tax and insurance escrow deposits to the holder of the allowed Class 6 Claim. The holder of the allowed Class 6 Claim must use all such escrow deposits to pay the property taxes and insurance on the Class 6 property as had been done under the original loan.   The holder of the allowed Class 6 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

  (ii) <u>1111(b) Treatment</u>.  If, and only if, the holder of the allowed Class 6 Claim elects to be treated as fully secured under § 1111(b), then the allowed Class 6 claim will be paid in 468 equal monthly payments, or such monthly payment amount as will ensure a present value equal to the present value of its collateral. Notwithstanding any provision to the contrary in the Deed of Trust securing the Class 6 Claim, any time between 60 and 180 months after the Effective Date, the Reorganized Debtor may transfer the Class 6 Property subject to the Liens, but only if (a) the Reorganized Debtor is not in default under the repayment terms of this Plan, (b) the Reorganized Debtor or the transferee pays the holder of the Class 6 Claim a transfer fee equal to 1% of the then outstanding principal balance of the Class 6 Claim at closing of the transfer, and (c) the holder of the Class 6  approves that transferee, which approval may only be reasonably withheld based upon the financial qualifications of the transferee. The holder of the allowed Class 6 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

Section 4.07  <u>Class 7- Claims Secured by Deed(s) of Trust on 5757 S Morris Blvd, Tucson, AZ 85706.</u>

  (a) <u>Description</u>. Class 7 consists of the claims to the extent allowed under Code § 506

arising from that certain loan from October 20, 2003 and secured by that certain Deed of Trust recorded: October 29, 2003 at Docket 12166 Page 7594 SEQUENCE 20032091352 in the records of Pima County Arizona encumbering the real property and improvements located at 5757 S Morris Blvd, Tucson, AZ 85706, Tax parcel ID # 140-23-083A, and legally described:

> THAT PORTION OF LOT 26 OF BLOCK 3 OF SOUTHLAND PARK, ACCORDING TO THE PLAT RECORDED IN BOOK 5 OF MAPS AND PLATS, PAGE 58, RECORDS OF PIMA COUNTY, ARIZONA AND FURTHER DESCRIBED AS FOLLOWS;
> COMMENCING AT THE NORTHWEST CORNER OF SAID LOT 26.
> THENCE N 89 ° 15"07" E ALONG THE NORTH LINE OF LOT 26, A DISTANCE OF 117 .93 FEET TO THE TRUE POINT OF BEGINNING,
> THENCE CONTINUE N 89° 15'07", E, A DISTANCE OF 117 .93 FEET TO THE NORTHEAST CORNER THEREOF.
> THENCE S 00 °00'00" W, A DISTANCE OF 79.04 FEET TO THE SOUTHEAST CORNER, THEREOF.
> THENCE S 89 ° 15'06" W, ALONG THE SOUTH LOT LINE, A DISTANCE OF 117 .93 FEET;
> THENCE N 00°00'00" W, A DISTANCE OF 79.04 FEET TO THE TRUE POINT OF BEGINNING.
> TOGETHER WITH A 20 FOOT INGRESS, EGRESS AND UTILITY EASEMENT LYING IN A PORTION OF LOTS 25 AND LOT 26 AND FURTHER DESCRIBED AS FOLLOWS;
> COMMENCING AT SAID NORTHWEST CORNER OF LOT 26,
> THENCE S 00°00'00" E, ALONG THE WEST. LOT LINE A DISTANCE OF 69.04 FEET TO THE TRUE POINT OF BEGINNING.
> THENCE N 89 ° 15'07" E, A DISTANCE OF 107.93 FEET;
> THENCE N 00 °00'00" W, A DISTANCE OF 30.00 FEET;
> THENCE N 89 ° 15'07" E, A DISTANCE OF 20.00 FEET;
> THENCE S 00°00'00" E, A DISTANCE OF 80.00 FEET;
> THENCE S 89°15'05" W, A DISTANCE OF 20.00 FEET;
> THENCE N 00 °00'00" W, A DISTANCE OF 30.00 FEET;
> THENCE S 89 ° 15'07"W, A DISTANCE OF 107 .93 FEET TO A POINT ON THE WEST LINE OF LOT 25,
> THENCE N 00°00'00" WEST ALONG SAID WEST LINE, A DISTANCE OF 20.00 FEET TO THE TRUE POINT 6 OF BEGINNING.

(b) <u>Allowance</u>. Unless the holder of the Class 7 claim elects to be treated as fully secured under Code § 1111(b), the Class 7 claim will be allowed in the amount of $25,816 or such other amount as the court determines under Code § 506. Any other

amounts owed under the October 2003 loan will be classified as a general unsecured claim.

(c) <u>Treatment</u>. Class 7 is impaired by this Plan.

   (i) The holder of the allowed Class 7 Claim will be paid in full plus interest at 4.125% per annum (or such other rate as the Court determines appropriate under Code § 1129(b)(2)(A)) on the following schedule: Beginning the first-day of the first calendar month occurring more than 30 days after the Effective Date, the Debtor will make monthly payments of principal and interest, based on a 40-year amortization schedule. In addition to monthly principal and interest payments, the Debtor will pay property tax and insurance escrow deposits to the holder of the allowed Class 7 Claim. The holder of the allowed Class 7 Claim must use all such escrow deposits to pay the property taxes and insurance on the Class 7 property as had been done under the original loan.   The holder of the allowed Class 7 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

   (ii) <u>1111(b) Treatment</u>.  If, and only if, the holder of the allowed Class 7 Claim elects to be treated as fully secured under § 1111(b), then the allowed Class 7 claim will be paid in 468 equal monthly payments, or such monthly payment amount as will ensure a present value equal to the present value of its collateral. Notwithstanding any provision to the contrary in the Deed of Trust securing the Class 7 Claim, any time between 60 and 180 months after the Effective Date, the Reorganized Debtor may transfer the Class 7 Property subject to the Liens, but only if (a) the Reorganized Debtor is not in default under the repayment terms of this Plan, (b) the Reorganized Debtor or the transferee pays the holder of the Class 7 Claim a transfer fee equal to 1% of the then outstanding principal balance of the Class 7 Claim at closing of the transfer, and (c) the holder of the Class 7 approves that transferee, which approval may only be reasonably withheld based upon the financial qualifications of the transferee.   The holder of the allowed Class 7 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

Section 4.08  <u>Class 8- Claims Secured by Deed(s) of Trust 6026 E 33rd St, Tucson AZ</u>

85711.

(a) <u>Description</u>. Class 8 consists of the claims to the extent allowed under Code § 506 arising from that certain loan January 26,2007 and secured by that certain Deed of Trust recorded: January 31, 2007 at DOCKET 12982, PAGE 5228, SEQUENCE 20070210634 in the records of Pima County Arizona, encumbering the real property and improvements located at 6026 E 33rd St, Tucson AZ 85711, Tax parcel ID # 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, and legally described:

LOT 13, OF GOLF LINKS ADDITION, A SUBDIVISION OF PIMA COUNTY, ARIZONA ACCORDING TO THE MAP OR PLAT THEREOF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF PIMA COUNTY, ARIZONA, IN BOOK 13 OF MAPSAND PLATS AT PAGE 39 THEREOF.

(b) <u>Allowance</u>. Unless the holder of the Class 8 claim elects to be treated as fully secured under Code § 1111(b), the Class 8 claim will be allowed in the amount of $73,369 or such other amount as the court determines under Code § 506. Any other amounts owed under the January 2007 loan will be classified as a general unsecured claim.

(c) <u>Treatment</u>. Class 8 is impaired by this Plan.

(i) The holder of the allowed Class 8 Claim will be paid in full plus interest at 4.125% per annum (or such other rate as the Court determines appropriate under Code § 1129(b)(2)(A)) on the following schedule: Beginning the first-day of the first calendar month occurring more than 30 days after the Effective Date, the Debtor will make monthly payments of principal and interest, based on a 40-year amortization schedule. In addition to monthly principal and interest payments, the Debtor will pay property tax and insurance escrow deposits to the holder of the allowed Class 8 Claim. The holder of the allowed Class 8 Claim must use all such escrow deposits to pay the property taxes and insurance on the Class 8 property as had been done under the original loan.  The holder of the allowed Class 8 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

(ii) <u>1111(b) Treatment</u>.  If, and only if, the holder of the allowed Class 8 Claim elects to be treated as fully secured under § 1111(b), then the allowed Class 8 claim will be paid in 468 equal monthly payments, or such monthly payment amount as will ensure a stream of payments with a present value equal to the present value of its

collateral. Notwithstanding any provision to the contrary in the Deed of Trust securing the Class 8 Claim, any time between 60 and 180 months after the Effective Date, the Reorganized Debtor may transfer the Class 8 Property subject to the Liens, but only if (a) the Reorganized Debtor is not in default under the repayment terms of this Plan, (b) the Reorganized Debtor or the transferee pays the holder of the Class 8 Claim a transfer fee equal to 1% of the then outstanding principal balance of the Class 8 Claim at closing of the transfer, and (c) the holder of the Class 8 approves that transferee, which approval may only be reasonably withheld based upon the financial qualifications of the transferee. .   The holder of the allowed Class 8 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

Section 4.09  <u>Class 9- Claims Secured by Deed(s) of Trust on 7575 North North Aire Avenue, Tucson, AZ 85741</u>.

(a) <u>Description</u>**.** Class 9 consists of the claims to the extent allowed under Code § 506 arising from that certain loan dated June 7, 2007 and secured by that certain Deed of Trust recorded: June 13, 2007 at DOCKET 13075 PAGE 1887, SEQUENCE 20071140388 in the of the records of Pima County Arizona encumbering the real property and improvements located at 7575 North North Aire Avenue, Tucson, AZ 85741, Tax parcel ID # 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, and legally described:

> LOT 8 OF SUNNY HILLS ESTATES, A SUBDIVISION OF PIMA COUNTY, ARIZONA, ACCORDING TO THE MAP OR PLAT THEREOF OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF PIMA COUNTY, ARIZONA, IN BOOK 29 OF MAPS AND PLATS AT PAGE 14 THEREOF

(b) <u>Allowance</u>.  Unless the holder of the Class 9 claim elects to be treated as fully secured under Code § 1111(b), the Class 9 claim will be allowed in the amount of $134,218 or such other amount as the court determines under Code § 506. Any other amounts amount owed under the June 2007 loan will be classified as a general unsecured claim.

(c) <u>Treatment</u>**.** Class 9 is impaired by this Plan.

(i) <u>Standard Treatment</u>. The holder of the allowed Class 9 Claim will be paid in full plus interest at 4.125% per annum (or such other rate as the Court determines appropriate under Code § 1129(b)(2)(A)) on the following schedule: Beginning the first-day of the first calendar month occurring more than 30 days after the

Effective Date, the Debtor will make monthly payments of principal and interest, based on a 40-year amortization schedule. In addition to monthly principal and interest payments, the Debtor will pay property tax and insurance escrow deposits to the holder of the allowed Class 9 Claim. The holder of the allowed Class 9 Claim must use all such escrow deposits to pay the property taxes and insurance on the Class 9 property as had been done under the original loan. The holder of the allowed Class 9 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

(ii)  <u>1111(b) Treatment</u>.  If, and only if, the holder of the allowed Class 9 Claim elects to be treated as fully secured under § 1111(b), then the allowed Class 9 claim will be paid in 468 equal monthly payments, or such monthly payment amount as will ensure a stream of payments with a present value equal to the present value of its collateral. Notwithstanding any provision to the contrary in the Deed of Trust securing the Class 9 Claim, any time between 60 and 180 months after the Effective Date, the Reorganized Debtor may transfer the Class 9 Property subject to the Liens, but only if (a) the Reorganized Debtor is not in default under the repayment terms of this Plan, (b) the Reorganized Debtor or the transferee pays the holder of the Class 9 Claim a transfer fee equal to 1% of the then outstanding principal balance of the Class 9 Claim at closing of the transfer, and (c) the holder of the Class 9 approves that transferee, which approval may only be reasonably withheld based upon the financial qualifications of the transferee. The holder of the allowed Class 9 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

Section 4.10 __Class 10- Claims Secured by Deed(s) of Trust on 9499 East Myra Drive, Tucson, AZ 85730.__

(a) __Description__. Class 10 consists of the claims to the extent allowed under Code § 506 arising from that certain loan dated February 27, 2008 and secured by that certain Deed of Trust recorded: February 28, 2008 at DOCKET 13252 PAGE 4199, SEQUENCE 20080400895 in the records of Pima County Arizona encumbering the real property and improvements located at 9499 East Myra Drive, Tucson, AZ 85730, Tax parcel ID # 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, and legally described:

> LOT 91 OF HEARTHSTONE HILLS NO. 6, A SUBDIVISION OF PIMA COUNTY, ARIZONA, ACCORDING TO THE MAP OR PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER IN BOOK 29 OF MAPS AND PLATS AT PAGE 41.

(b) __Allowance__. Unless the holder of the Class 10 claim elects to be treated as fully secured under Code § 1111(b), the Class 10 claim will be allowed in the amount of $81,746 or such other amount as the court determines under Code § 506. Any other amounts owed under the February 2008 loan will be classified as a general unsecured claim.

(c) __Treatment__. Class 10 is impaired by this Plan.

(i) __Standard Treatment__. The holder of the allowed Class 10 Claim will be paid in full plus interest at 4.125% per annum (or such other rate as the Court determines appropriate under Code § 1129(b)(2)(A)) on the following schedule: Beginning the first-day of the first calendar month occurring more than 30 days after the Effective Date, the Debtor will make monthly payments of principal and interest, based on a 40-year amortization schedule. In addition to monthly principal and interest payments, the Debtor will pay property tax and insurance escrow deposits to the holder of the allowed Class 10 Claim. The holder of the allowed Class 10 Claim must use all such escrow deposits to pay the property taxes and insurance on the Class 10 property as had been done under the original loan.  The holder of the allowed Class 10 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

(ii) __1111(b) Treatment__.  If, and only if, the holder of the allowed Class 10 Claim elects to be treated as fully secured under § 1111(b), then the allowed Class 10 claim will be paid in 468 equal monthly payments, or such monthly payment amount as will ensure a stream of payments with a present value equal to the

present value of its collateral. Notwithstanding any provision to the contrary in the Deed of Trust securing the Class 10 Claim, any time between 60 and 180 months after the Effective Date, the Reorganized Debtor may transfer the Class 10 Property subject to the Liens, but only if (a) the Reorganized Debtor is not in default under the repayment terms of this Plan, (b) the Reorganized Debtor or the transferee pays the holder of the Class 10 Claim a transfer fee equal to 1% of the then outstanding principal balance of the Class 10 Claim at closing of the transfer, and (c) the holder of the Class 10 approves that transferee, which approval may only be reasonably withheld based upon the financial qualifications of the transferee. The holder of the allowed Class 10 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

Section 4.11  Class 11- Claims Secured by Deed(s) of Trust on 9685 N Linda Vista Place, Tucson, AZ 85742.

(a) Description. Class 11 consists of the claims to the extent allowed under Code § 506 arising from that certain loan dated April 7, 2015 and secured by that certain Deed of Trust recorded: April 16, 2015 SEQUENCE 20151060506 in the records of Pima County Arizona encumbering the real property and improvements located at 9685 N Linda Vista Place, Tucson, AZ 85742, Tax parcel ID # 216-35-070L, and legally described:

PARCEL I:

THAT PORTION OF THE NORTH 400 FEET OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 14, TOWNSHIP 12 SOUTH, RANGE 12 EAST, GILA AND SALT RIVER BASE AND MERIDIAN, PIMA COUNTY, ARIZONA DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SAID SECTION 14;

THENCE SOUTH 89 DEGREES 45 MINUTES 29 SECONDS WEST (RECORD) SOUTH 89 DEGREES 45 MINUTES 15 SECONDS WEST (MEASURED) ALONG THE NORTH LINE OF SAID SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 14,439.32 FEET (RECORD) 439.51 FEET (MEASURED) TO THE TRUE POINT OF BEGINNING OF THE PARCEL HEREIN DESCRIBED:

THENCE SOUTH 0 DEGREES 05 MINUTES 00 SECONDS EAST (RECORD) NORTH 0 DEGREES 07 MINUTES 16 SECONDS WEST (MEASURED), 199.93 FEET;

THENCE SOUTH 0 DEGREES 07 MINUTES 16 SECONDS EAST (MEASURED) NORTH 0 DEGREES 05 MINUTES 00 SECONDS WEST (RECORD), 69.80 FEET;

THENCE SOUTH 89 DEGREES 52 MINUTES 33 SECONDS WEST, 15.0 FEET;

THENCE SOUTH O DEGREES 07 MINUTES 27 SECONDS EAST, 30.0 FEET;

THENCE NORTH 89 DEGREES 52 MINUTES 33 SECONDS EAST, 15.0 FEET;

THENCE SOUTH O DEGREES 07 MINUTES 27 SECONDS EAST (MEASURED) NORTH 0 DEGREES 05 MINUTES 00 SECONDS EAST

(RECORD), 110.13 FEET;

THENCE SOUTH 89 DEGREES 45 MINUTES 29 SECONDS WEST (RECORD) SOUTH 89 DEGREES 45 MINUTES 50 SECONDS WEST (MEASURED), 219.67 FEET;

THENCE SOUTH 89 DEGREES 45 MINUTES 50 SECONDS WEST (MEASURED) SOUTH 89 DEGREES 45 MINUTES 29 SECONDS WEST (RECORD), 219.67 FEET;

THENCE: NORTH 0 DEGREES 07 MINUTES 00 SECONDS WEST (MEASURED) NORTH 0 DEGREES 06 MINUTES 00 SECONDS WEST (RECORD), 199.90 FEET (MEASURED), 200.0 FEET (RECORD);

THENCE CONTINUE NORTH O DEGREES 07 MINUTES 00 SECONDS WEST (MEASURED) NORTH O DEGREES 06 MINUTES 00 SECONDS WEST (RECORD), 199.89 FEET (MEASURED) 200.0 FEET (RECORD) TO THE NORTH LINE OF SAID SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER;

THENCE NORTH 89 DEGREES 45 MINUTES 29 SECONDS EAST (RECORD) NORTH 89 DEGREES 45 MINUTES 15 SECONDS EAST (MEASURED) ALONG SAID NORTH LINE, 219.65 FEET;

THENCE CONTINUE NORTH 89 DEGREES 45 MINUTES 29 SECONDS EAST (RECORD) NORTH 89 DEGREES 45 MINUTES 15 SECONDS EAST (MEASURED) ALONG THE NORTH LINE OF SAID SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER, 219.65 FEET THE TRUE POINT OF BEGINNING.

EXCEPT ALL COAL AND OTHER MINERALS AS RESERVED IN THE PATENT FROM THE UNITED STATES OF AMERICA

PARCEL IA:

A NON-EXCLUSIVE EASEMENT FOR INGRESS, EGRESS AND UTILITY PURPOSES OVER, UNDER, UPON AND ACROSS A STRIP OF LAND 50 FEET IN WIDTH, THE CENTERLINE BEING DESCRIBED AS FOLLOWS:

COMMENCING AT THE SOUTHWEST CORNER OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SAID SECTION 14; THENCE NORTH 55 DEGREES 05 MINUTES 42 SECONDS EAST, ALONG THE SOUTHEASTERLY LINE OF THAT CERTAIN PARCEL DESCRIBED IN DEED TO TERRITORIAL FUND, A PARTNERSHIP, RECORDED IN DOCKET 4792 AT PAGE 88, A DISTANCE OF 820 FEET TO THE TRUE POINT OF BEGINNING;

THENCE NORTH 27 DEGREES 41 MINUTES 11 SECONDS WEST, A DISTANCE OF 506.08 FEET TO A POINT ON THE SOUTH LINE OF THE NORTH 400 FEET OF SAID SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SAID SECTION 14, THE POINT OF TERMINATION OF SAID EASEMENT; THE SIDELINES OF THE EASEMENT HEREIN DESCRIBED WILL BE LENGTHENED OR SHORTENED, AS NECESSARY, TO TERMINATE ON THE SOUTH LINE OF SAID NORTH 400 FEET AND ON SAID SOUTHEASTERLY LINE OF LAND DESCRIBED IN DEED RECORDED IN DOCKET 4792 AT PAGE 88

PARCEL IB:

A NON-EXCLUSIVE EASEMENT FOR INGRESS, EGRESS AND UTILITY PURPOSES OVER, UNDER, UPON AND ACROSS A STRIP OF LAND 50 FEET IN WIDTH, THE CENTERLINE BEING DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF SAID SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SAID SECTION 14; THENCE NORTHEASTERLY TO A POINT ON THE EAST LINE OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER, DISTANT 403 FEET SOUTH FROM THE NORTHEAST CORNER OF SAID SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER BEING THE TERMINUS OF SAID EASEMENT, SAID EASEMENT EXTENDING ONLY FROM THE NORTH LINE OF PALO FIERRO ROAD AND THE WEST LINE OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER TO THE EAST LINE OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER AND THE SOUTH LINE OF THE NORTH 400 FEET OF SAID SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SAID SECTION 14

PARCEL II:

THAT PORTION OF A 20 FOOT WELLSITE IN THE NORTH 400 FEET OF THE SOUTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 14, TOWNSHIP 12 SOUTH, RANGE 12 EAST, GILA AND SALT RIVER BASE AND MERIDIAN, PIMA COUNTY, ARIZONA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SAID SECTION 14; THENCE SOUTH 89 DEGREES 45 MINUTES 29 SECONDS (RECORD) SOUTH 89 DEGREES 45 MINUTES 15 SECONDS WEST (MEASURED) ALONG THE NORTH LINE OF SAID SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SAID SECTION 14,439.32 FEET (RECORD)

439.51 FEET (MEASURED);

THENCE SOUTH O DEGREES 05 MINUTES 00 SECONDS EAST (RECORD) SOUTH 0 DEGREES 07 MINUTES 16 SECONDS EAST (MEASURED) 269.73 FEET (MEASURED) TO THE TRUE POINT OF BEGINNING OF THE PARCEL HEREIN DESCRIBED;

THENCE SOUTH 89 DEGREES 52 MINUTES 33 SECONDS WEST, 15.0 FEET;

THENCE SOUTH O DEGREES 07 MINUTES 27 SECONDS EAST, 20.0 FEET;

THENCE NORTH 89 DEGREES 52 MINUTES 33 SECONDS EAST, 15.0 FEET;

THENCE NORTH O DEGREES 07 MINUTES 27 SECONDS WEST (MEASURED) NORTH 0 DEGREES 05 MINUTES 00 SECONDS EAST (RECORD), 20.0 FEET TO THE TRUE POINT OF BEGINNING.

(b) <u>Allowance</u>. Unless the holder of the Class 11 claim elects to be treated as fully secured under Code § 1111(b), the Class 11 claim will be allowed in the amount of $200,000 or such other amount as the court determines under Code § 506. Any other amounts owed under the April 2015 loan will be classified as a general unsecured claim.

(c) <u>Treatment</u>. Class 11 is impaired by this Plan.

  (i) <u>Standard Treatment</u>. The holder of the allowed Class 11 Claim will be paid in full plus interest at 4.125% per annum (or such other rate as the Court determines appropriate under Code § 1129(b)(2)(A)) on the following schedule: Beginning the first-day of the first calendar month occurring more than 30 days after the Effective Date, the Debtor will make monthly payments of principal and interest, based on a 40-year amortization schedule. In addition to monthly principal and interest payments, the Debtor will pay property tax and insurance escrow deposits to the holder of the allowed Class 11 Claim. The holder of the allowed Class 11 Claim must use all such escrow deposits to pay the property taxes and insurance on the Class 11 property as had been done under the original loan. The holder of the allowed Class 11 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

  (ii) <u>1111(b) Treatment</u>. If, and only if, the holder of the allowed Class 11 Claim elects to be treated as fully secured under § 1111(b), then the allowed Class 11 claim will be paid in 468 equal monthly payments, or such monthly payment amount as will ensure a stream of payments with a present value equal to the present value of its collateral. Notwithstanding any provision to the contrary in the Deed of Trust securing the Class 11 Claim, any time between 60 and 180 months after the Effective Date, the Reorganized Debtor may transfer the Class 11 Property subject to the Liens, but only if (a) the Reorganized Debtor is not in default under the repayment terms of this Plan, (b) the Reorganized Debtor or the transferee pays the holder of the Class 11 Claim a transfer fee equal to 1% of the then outstanding principal balance of the Class 11 Claim at closing of the transfer, and (c) the holder of the Class 11 approves that transferee, which approval may only be reasonably withheld based upon the financial qualifications of the transferee. The holder of the allowed Class 11 Claim will retain its lien pursuant to the terms of its Deed of Trust, except that the terms of such Deed of Trust, and all pre-bankruptcy loan documents will be deemed modified to substitute the Debtor as the borrower, maker or trustor for the original borrower(s), to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

Section 4.12  <u>Class 12- Claims Secured by 2011 Zone Spark VIN ending 0021</u>.

  (a) <u>Description</u>. Class 12 consists of the claims, to the extent allowed under Code §

506, purchase money loan secured by that certain 2011 Zone Spark VIN ending 0020.  As of the Petition Date, the Debtor estimates the Class 12 creditor was owed $5000.

(b) <u>Treatment</u>. Class 12 is impaired by this Plan. The holder of the allowed Class 12 Claim will be paid in full plus interest at 4.125% per annum (or such other rate as the Court determines appropriate under Code § 1129(b)(2)(A)) on the following schedule: Beginning the first-day of the first calendar month occurring more than 30 days after the Effective Date, the Debtor will make monthly payments of principal and interest, based on a 5-year amortization schedule. The holder of the allowed Class 12 Claim will retain its lien pursuant to the terms of its original loan, except that the terms of such loan, and all pre-bankruptcy loan documents will be deemed modified to incorporate the new maturity date and modified repayment terms, and any and all defaults arising prior to the Effective Date will be deemed cured or waived.

Section 4.13  <u>Class 13-Secured Property Tax Claims</u>.

(a) <u>Description</u>. Class 13 consists of the allowed claims of the Pima County Treasurer Secured Property Tax Claim held by the Pima County Treasurer to the extent allowed as a secured claim under § 506 of the Code.

(b) <u>Allowance</u>. The Debtor does not believe any secured tax claims are owed.

(c) <u>Treatment</u>.  Class 13 is not impaired by this Plan. The holder of the Allowed Class 13 Claim will be paid in equal monthly installments so that they are paid in full within plus statutory interest within 60 months of the Petition Date. The Debtor reserves the right to prepay the Class 13 claim at any time on or after the effective date.  The holder of the allowed Class 13 Claim will retain its lien until paid in full.

Section 4.14  <u>Class 14-</u> General Unsecured Claims.

(a) <u>Description</u>. Class 14 consists of all unsecured claims allowed under § 502 of the Code.

(b)  <u>Treatment</u>. Class 14 is impaired by this Plan. Holders of allowed Class 14 claims will be paid a pro rata share of the annual distributions from the Unsecured Claim Fund each April 15th until the earlier of (1) the date all unsecured creditors are paid in full, or (2) April 15, 2024.  So long as holders of Allowed Class 14 claims are entitled to payments under the Plan, the Reorganized Debtor must provide each holder of an allowed Class 14 Claim a reviewed annual financial statement prepared in accordance with GAAP, describing, among other things, how Net Distributable Profits were calculated and any distributions the preceding calendar year to Class 15 Equity Interest Holders on account of capital paid into the Debtor on or after the Plan Effective Date.

Section 4.15  <u>Class 15- Equity Interests</u>.

  (a) Description. Class 15 consists of the equity interests in the Debtor.

  (b) Treatment.  Class 15 is impaired by this Plan.  Holders of allowed Class 15
      Interests will receive nothing on account of those interests unless such holder of a
      Class 15 Interest contributes cash, or the equivalent of cash, on the Effective Date
      with a value at least equal to 10% of the cumulative value of all unsecured claims.

## Article V.    ALLOWANCE AND DISALLOWANCE OF CLAIMS

Section 5.01  Disputed claim. A disputed claim is a claim that has not been allowed or
disallowed by a final non-appealable order, and as to which either:

  (a) a proof of claim has been filed or deemed filed, and the Debtor or another party in
      interest has filed an objection; or

  (b) no proof of claim has been filed, and the Debtor has scheduled such claim as
      disputed, contingent, or unliquidated.

Section 5.02  Delay of distribution on a disputed claim. No distribution will be made on
account of a disputed claim unless such claim is allowed by a final non-appealable order.

Section 5.03  Settlement of disputed claims.   The Debtor will have the power and
authority to settle and compromise a disputed claim with court approval and compliance
with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article VI.    PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 6.01    Assumed executory contracts and unexpired leases.

  (a) Except for executory contracts and unexpired leases that have been assumed, and if
      applicable assigned, pursuant to an order entered under Code § 365 before the
      effective date or that are the subject of a pending motion to assume, and if
      applicable assign, the Debtor will be conclusively deemed to have rejected all
      executory contracts and unexpired leases as of the effective date. A proof of a
      claim arising from the rejection of an executory contract or unexpired lease under
      this section must be filed no later than 45 days after the date of the order
      confirming this Plan.

## Article VII.  MEANS FOR IMPLEMENTATION OF THE PLAN

Section 7.01  Conditions Precedent to Effective Date. No less than one business day prior
              to the Effective Date the following transactions must have occurred:

(a) <u>Establish Unsecured Claim Fund Account</u>. The Debtors will establish a segregated Unsecured Claim Fund Account. The Unsecured Claim Fund will be the sole source of payment to Holders of Class 14 Claims.

(b) <u>Funding of Equity Contribution by Class 15 Interest Holders</u>**.** The Holders of the allowed Class 15 Equity Interests must each have funded their equity contribution equal to 10% of the allowed unsecured claims in Class 14 into to the Debtor's DIP Operating Account.

(c) <u>Funding a Debt Service Reserve</u>.  The Reorganized Debtor will establish a segregated debt service reserve account with funds equal to 3 months payments on secured claims, for purposes of funding payments on secured claims before properties are generating rents.

(d) <u>Renovation Fund</u>.  The Reorganized Debtor will create a renovation fund at least 30% of the effective date cash for purposes of renovating the properties.

Section 7.02    <u>Operation and funding of Unsecured Claim Fund</u>.

(a) <u>Disbursements</u>. The Debtor will disburse 100% of the funds on hand in the Unsecured Claim's Fund Account on a pro-rata basis to the holders of allowed Class 14 claims on the dates specified Section 4.05

(b) <u>Funding</u>. The Debtor must make the following contributions to the Unsecured Claims Fund:

  1) Not later than the last business day of March 2019, the Reorganized Debtor must deposit the greater of $5,000 or 25% of Net Distributable Profits in Calendar Year 2020, ***but if*** holders of Class 15 equity interests have been paid distributions equal to any capital paid into the Reorganized Debtor on or after the Plan Effective Date plus annualized return on investment of 15% per annum, then the Reorganized Debtor must deposit 50% of Net Distributable Profits into the Unsecured Claims Fund.

  2) Not later than the last business day of March 2020, the Reorganized Debtor must deposit the greater of $5,000 or 25% of Net Distributable Profits in Calendar Year 2019, ***but if*** holders of Class 15 equity interests have been paid distributions equal to any capital paid into the Reorganized Debtor on or after the Plan Effective Date plus annualized return on investment of 15% per annum, then the Reorganized Debtor must deposit 50% of Net Distributable Profits into the Unsecured Claims Fund.

  3) Not later than the last business day of March 2021, the Reorganized Debtor must deposit the greater of $5,000 or 25% of Net Distributable Profits in Calendar Year 2020, ***but if*** holders of Class 15 equity interests have been paid distributions equal to any capital paid into the Reorganized Debtor on or after

the Plan Effective Date plus and annualized return on investment of 15% per annum, then the Reorganized Debtor must deposit 50% of Net Distributable Profits into the Unsecured Claims Fund.

4) Not later than the last business day of March 2022, the Reorganized Debtor must deposit the greater of $5,000 or 25% of Net Distributable Profits in Calendar Year 2021, *but if* holders of Class 15 equity interests have been paid distributions equal to any capital paid into the Reorganized Debtor on or after the Plan Effective Date plus and annualized return on investment of 15% per annum, then the Reorganized Debtor must deposit 50% of Net Distributable Profits into the Unsecured Claims Fund.

5) Not later than the last business day of March 2023, the Reorganized Debtor must deposit the greater of $5,000 or 25% of Net Distributable Profits in Calendar Year 2022, *but if* holders of Class 15 equity interests have been paid distributions equal to any capital paid into the Reorganized Debtor on or after the Plan Effective Date plus and annualized return on investment of 15% per annum, then the Reorganized Debtor must deposit 50% of Net Distributable Profits into the Unsecured Claims Fund.

6) Not later than the last business day of March 2024, the Reorganized Debtor must deposit the greater of $25,000 or 25% of Net Distributable Profits in Calendar Year 2023, *but if* holders of Class 15 equity interests have been paid distributions equal to any capital paid into the Reorganized Debtor on or after the Plan Effective Date plus and annualized return on investment of 15% per annum, then the Reorganized Debtor must deposit 50% of Net Distributable Profits into the Unsecured Claims Fund.

Section 7.03 <u>Continued Existence and Vesting of Assets in Reorganized Debtor</u>. The Debtor will continue in existence after the Effective Date as a corporation, with all the powers available to such entities under applicable law and pursuant to their organizational documents in effect prior to the Effective Date as such may be amended by the Plan, without prejudice to any right to terminate such existence (whether by merger or otherwise) under applicable law after the Effective Date. Except as otherwise provided in the Plan, on and after the Effective Date, all property of the Debtor's Estates and any property acquired by the Debtor or the Reorganized Debtor under the Plan will vest in the Reorganized Debtor. On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire or dispose of property, and compromise or settle any Claims or Membership Interests, without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order.

Section 7.04  <u>Management of the Reorganized Debtor</u>. Continued full time management of the Debtor by Colin Reilly and Robert H Reilly is essential to the successful performance of the Plan. So, from and after the Effective Date, the Reorganized Debtors will continue to be managed Colin Reilly and Robert H Reilly.

**Article VIII. GENERAL PROVISIONS.**

Section 8.01   <u>Definitions</u>. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

(a) <u>Net Distributable Profits</u> means Net Operating Income after taxes less payments to Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 under the Plan, less funds reserved for taxes, less reserve for replacement, and working capital sufficient to pay 6 months operating expenses and payments to Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, and 13 under the Plan.

Section 8.02  <u>Effective Date</u>. The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order that the conditions precedent to the Effective Date have occurred or have been waived unless stayed by Court order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

Section 8.03  <u>Retention of Jurisdiction</u>. Notwithstanding confirmation or the Effective Date having occurred, the Court will retain and have full jurisdiction as is allowed under Title 28 of the United States Code, the Bankruptcy Code, or other applicable law to enforce the provisions, purposes, and intent of the Plan, including, without limitation, any proceedings which relate to:

(a) Determination of the allowance, classification, or priority of claims, liens and interests;

(b) Construing, implementing, enforcing, executing, or consummating the Plan, the Confirmation Order, any other order of the Court, any document attached as an exhibit to the Plan or contemplated by the Plan, or any other matter referred to in the Plan;

(c) Determination of all matters that are pending before the Court in the Chapter 11 Case prior to the Effective Date or that may arise after the Effective Date;

(d) Determination of any and all applications for allowance or requests for payment of administrative claims, including, without limitation, requests for allowance and

payment of compensation and expense reimbursement of professional persons asserting administrative claims;

(e) Determination of motions for the rejection, assumption, or assignment of executory contracts or unexpired leases, and determination of the allowance of any claims resulting from the rejection of executory contracts and unexpired leases;

(f) Determination of all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted prior to the closing of the Chapter 11 Case;

(g) Modification of the Plan pursuant to §1127 of the Bankruptcy Code and before substantial consummation thereof on the Effective Date, remedy of any defect or omission in the Plan or Confirmation Order, reconciliation of any inconsistency within the Plan so as to carry out its intent and purpose, and reconciliation of any inconsistency between the Plan and any loan documents, so as to carry out the intent and purpose of the loan documents;

(h) Issuance of injunctions or taking such other actions or making such other orders as may be necessary or appropriate to restrain interference with the Debtor by any party with the Plan or its execution or implementation by any person;

(i) Issuance of such orders in aid of consummation of the Plan and the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person, to the full extent authorized by the Bankruptcy Code;

(j) Ordering the assumption or rejection of executory contracts or leases to which the Debtor is a party, which have not previously been resolved;

(k) Any determination necessary or appropriate under §505 of the Bankruptcy Code, or any other determination relating to priority tax claims, taxes, tax refunds, tax attributes, and tax benefits affecting the Debtor, its estate, or the Property through the end of the fiscal year in which the Effective Date occurs;

(l) Entry of a final decree closing the Chapter 11 Case; and

(m) Determination of such other matters, and for such other purposes, as may be provided in the Confirmation Order.

Section 8.04   Retention of Claims and Causes of Action. The Debtor will retain the right to pursue any and all claims or causes of action identified as assets of his estate on Schedule A/B, or arising under the Bankruptcy Code.

Section 8.05   Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

Section 8.06   Binding effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

1  Section 8.07  Captions. The headings contained in this Plan are for convenience of
2                reference only and do not affect the meaning or interpretation of this Plan.

3

4  Dated:  September 6, 2018        **PROPONENT:**

5                                  GOLD STAR CAPITAL L.L.C., an Arizona Limited
                                    Liability Company

6                                  By /s/Colin Reilly
7                                        Colin Reilly
                                    Its: Manager

8                                  **WATERFALL, ECONOMIDIS, CALDWELL,**
9                                  **HANSHAW & VILLAMANA, P.C.**

10
                                   By: /s/ Kasey C Nye #20610
11                                     *Attorneys for Debtor*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26